UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Arthur Doiron

    v.                                                Case No. 21-cv-360-SM

Lt. Jim Brown et al.[1]

**REPORT AND RECOMMENDATION**

Arthur Doiron, who is incarcerated at the New Hampshire State Prison ("NHSP"), filed an action in this court under 42 U.S.C. § 1983, asserting that the defendants, New Hampshire Department of Corrections ("DOC") employees, violated rights accruing to him under the Due Process Clause of the Fourteenth Amendment, the Eighth Amendment, the First Amendment, and state law. Before the court for consideration and a Report and Recommendation ("R&R") as to disposition is Mr. Doiron's "Motion for Preliminary Injunction" (Doc. No. 2). Mr. Doiron seeks a preliminary injunction directing the defendants: (1) to vacate

---

[1] Mr. Doiron names the following defendants to this action: New Hampshire State Prison ("NHSP") Lt. Jim Brown; NHSP Disciplinary Hearing Officer Sgt. Barton, whose first name is unknown ("FNU"); NHSP Maj. Jon Fouts; NHSP Warden Michelle Edmark; NHSP Corrections Officers FNU Navarro and FNU Partridge; NHSP Classification Officials Glenn Matthews, Jay Mackey, and Tara Whiting; New Hampshire Department of Corrections ("DOC") Commissioner Helen Hanks; and DOC Commissioner Designee Chris Kench. Each plaintiff is sued in her or his individual capacity.

the guilty findings and sanctions imposed on him on April 1, 2021 with regard to two prison disciplinary offenses; (2) to reverse the April 14, 2021 classification security level upgrade effected as a result of those disciplinary offenses; and (3) to grant Mr. Doiron 120 days of earned time credit which he claims the defendants improperly prevented him from earning.

### Background[2]

On or before January 29, 2021, NHSP Lt. Jim Brown charged Mr. Doiron with two disciplinary offenses, alleging that Mr. Doiron had telephone conversations with his mother about having repairs made to their truck, and that those conversations were actually coded communications related to drug transactions and bringing drugs into the prison.  Lt. Brown alleged that those conversations constituted evidence of a conspiracy which resulted in the introduction of illicit drugs into the NHSP.

On January 29, 2021, Mr. Doiron was removed from his medium custody housing unit and placed in the prison's Special Housing Unit ("SHU") on "Pending Administrative Review" ("PAR") status in connection with his disciplinary charges.  Mr. Doiron asserts

---

[2]The background facts are derived from the factual allegations in Mr. Doiron's motion (Doc. No. 2), complaint (Doc. No. 1), and complaint supplement (Doc. No. 4-1).

that when he was placed on PAR status and moved to the SHU, he was automatically removed from all of the classes in which he was enrolled, and from the waitlists for an anger management class and Family Connections Center program. Mr. Doiron asserts that he would have earned a sixty-day reduction of his minimum and maximum sentences had he been allowed to complete the "Thinking for a Change" class, and an additional sixty-day reduction of his minimum and maximum sentences had he been allowed to take and complete the anger management class. Mr. Doiron remained on PAR status until his April 1, 2021 disciplinary hearing on those charges.

Mr. Doiron's disciplinary hearing was originally scheduled for February 22, 2021, but was continued to March 1, 2021 at Mr. Doiron's request. On March 1, 2021, however, Mr. Doiron was moved to the NHSP Health Services Center ("HSC") where he was placed on suicide watch. Mr. Doiron remained in the HSC on suicide watch until March 31, 2021. Mr. Doiron's disciplinary hearing was continued until April 1, 2021, less than twenty-four hours after he was released from suicide watch.

Following that hearing, Disciplinary Hearing Officer Sgt. Barton found Mr. Doiron guilty of the charged disciplinary offenses and imposed sanctions, including 125 hours of extra duty and 125 days loss of visits. Mr. Doiron states that Sgt.

Barton imposed additional sanctions, which are not specifically described in Mr. Doiron's complaint.  Mr. Doiron asserts that at the time of the hearing, Sgt. Barton told him that those unspecified sanctions were suspended, but after the hearing, Sgt. Barton imposed those sanctions without notice to Mr. Doiron or further hearing.

Mr. Doiron appealed the results of the disciplinary hearing to Sgt. Barton, asking him to reverse both his guilty findings and the sanctions imposed.  When that was unsuccessful, Mr. Doiron filed administrative appeals, first to NHSP Warden Michelle Edmark and then to the office of the DOC Commissioner.  All of his appeals were denied.

After the disciplinary hearing, Lt. Brown initiated proceedings to have Mr. Doiron's classification level upgraded to a higher security status.  Mr. Doiron's classification upgrade hearing was held on April 14, 2021.  At that hearing, his classification status was upgraded from medium custody to C-4 security status.

Mr. Doiron alleges that throughout the disciplinary and classification proceedings against him, Lt. Brown, Sgt. Barton, Warden Edmark, and the DOC Commissioner's designee, Chris Kench, subjected him to a number of due process violations.  Mr. Doiron

also states that the defendants' actions underlying the claims in this case violated the prison's own policies.

## Discussion

I. Preliminary Injunction Standard

"'A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'" Glossip v. Gross, 576 U.S. 863, 876 (2015) (citation omitted). The likelihood of success and irreparable harm are the factors that weigh most heavily in the analysis. See Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 22 (2008); Shurtleff v. City of Bos., 928 F.3d 166, 171 (1st Cir. 2019); Voice of the Arab World, Inc. v. MDTV Med. News Now, Inc., 645 F.3d 26, 32 (1st Cir. 2011). The burden of proof is on the movant. See Esso Std. Oil Co. v. Monroig-Zayas, 445 F.3d 13, 18 (1st Cir. 2006).

II. Likelihood of Success on the Merits

As a prerequisite to obtaining injunctive relief, a movant must demonstrate that he will likely prevail on the merits of his underlying claims. See Glossip, 576 U.S. at 876; W. Auto Supply Co. v. Savage Arms (In re Savage Indus.), 43 F.3d 714,

719 n.8 (1st Cir. 1994). Mr. Doiron's claims alleging procedural due process violations are the claims relevant to his request for injunctive relief. As fully explained in the Order issued simultaneously with this R&R ("Simultaneous Order"), Mr. Doiron's due process claims, identified in the Simultaneous Order as Claims 1(a) – 1(aa), have not yet been sufficiently stated to state a claim upon which relief might be granted. Mr. Doiron has thus failed, at this time, to assert facts demonstrating that he is likely to succeed on the merits of those claims.

III. <u>Irreparable Harm</u>

    A.   <u>Irreparable Harm Standard</u>

"'[P]erhaps the single most important prerequisite for the issuance of a preliminary injunction is a demonstration that if it is not granted the applicant is likely to suffer irreparable harm before a decision on the merits can be rendered.'" <u>Voice of the Arab World</u>, 645 F.3d at 32 (quoting 11A C. Wright, A. Miller & M. Kane, <u>Federal Practice & Procedure</u> § 2948, at 129 (2d ed. 1995)). "A finding of irreparable harm must be grounded on something more than conjecture, surmise, or a party's unsubstantiated fears of what the future may have in store." <u>Charlesbank Equity Fund II, Ltd. P'ship v. Blinds To Go, Inc.</u>,

370 F.3d 151, 162 (1st Cir. 2004).

    B.    <u>Earned Time Credit</u>

Mr. Doiron asserts that absent issuance of the injunction he has requested, he will lose the ability to receive 120 days of earned time credit (against both his minimum and maximum sentences) that he would have received if his transfer to the SHU had not prevented him from finishing two classes.  "The purpose of a preliminary injunction is to preserve the status quo, freezing an existing situation so as to permit the trial court, upon full adjudication of the case's merits, more effectively to remedy discerned wrongs."  <u>CMM Cable Rep., Inc. v. Ocean Coast Props., Inc.</u>, 48 F.3d 618, 620 (1st Cir. 1995).  Mr. Doiron asks the court to issue a "mandatory preliminary injunction, which requires affirmative action by the non-moving party."  <u>Braintree Labs., Inc. v. Citigroup Glob. Mkts., Inc.</u>, 622 F.3d 36, 40-41 (1st Cir. 2010).  "Because a mandatory preliminary injunction alters rather than preserves the status quo, it 'normally should be granted only in those circumstances when the exigencies of the situation demand such relief.'"  <u>Id.</u> at 41 (citation omitted).  "Because [mandatory] injunctions are 'disfavor[ed],' the moving party must make an even stronger showing of entitlement to relief than is typically required."

7

La Simple Co, Ltd. v. SLP Enters., LLC, 2021 U.S. Dist. LEXIS 81209, at *10-*11, 2021 WL 1648762, at *4 (D. Mass. Apr. 27, 2021) (quoting Lewis v. Gen. Elec. Co., 37 F. Supp. 2d 55, 62 (D. Mass. 1999)).

Mr. Doiron has not demonstrated that, absent his transfer to the SHU and placement on PAR status, he would have successfully finished "Thinking for a Change," and the anger management class for which he was waitlisted at the time of that transfer. In effect, Mr. Doiron asks the court to put him in a better position than he would be in had the defendants not prevented him from finishing those classes, as he asks the court to order that he receive earned time credit although he has not satisfied the requirements for such credit. However confidently stated, Mr. Doiron's claim of irreparable harm consisting of the loss of earned time credit is based only on his speculation that he would have finished those programs successfully and become entitled to earned time credit. Such speculation does not provide grounds for granting preliminary injunctive relief.

    C.   Impact on Expected Parole Date

Mr. Doiron further asserts that he will suffer irreparable harm, in that his guilty disciplinary finding and classification

8

upgrade will slow his progression through the prison's security classification system and cause him to be released on parole later than he otherwise would. In support of these assertions, Mr. Doiron states that he was scheduled to plead guilty to a criminal charge on May 28, 2021 and expected to receive a 1 – 5 year prison sentence for that offense. Mr. Doiron claims that without the guilty disciplinary finding and classification upgrade challenged in this case, he would be able to proceed to minimum security and then to a halfway house less than eight months after the imposition of that new sentence. Otherwise, Mr. Doiron asserts, he would not be able to obtain minimum security status or a community corrections placement until eight to nine months into his new sentence, which would mean he would remain incarcerated on that sentence beyond his minimum parole date.

Assuming that Mr. Doiron was in fact sentenced as expected on May 28, 2021, he has failed to demonstrate more than conjecture as to when he would be released from incarceration on the sentence he was already serving on May 28, 2021, if not for the April 2021 disciplinary finding and classification upgrade. Mr. Doiron's further assertion that, absent the disciplinary finding and classification upgrade he would be released from his 1 – 5 year sentence at his minimum parole date, is equally

speculative.  Conjecture and surmise regarding uncertain future events does not provide a basis for this court's finding of irreparable harm.  See id.

For these reasons, Mr. Doiron cannot show that, without the requested injunction, he will suffer imminent, nonspeculative, irreparable harm.  Accordingly, the district judge should deny Mr. Doiron's motion for a preliminary injunction, without prejudice to his ability to again seek such relief should circumstances warrant in the future.

**Conclusion**

For the foregoing reasons, the district judge should deny Mr. Doiron's motion for preliminary injunctive relief (Doc. No. 2) without prejudice.  Any objections to this R&R must be filed within fourteen days of receipt of this notice.  See Fed. R. Civ. P. 72(b)(2).  The fourteen-day period may be extended upon motion.  Failure to file specific written objections to the Report and Recommendation within the specified time waives the right to appeal the district court's order.  See Santos-Santos v. Torres-Centeno, 842 F.3d 163, 168 (1st Cir. 2016).

_____
Andrea K. Johnstone
United States Magistrate Judge

June 8, 2021

cc: Arthur Doiron, pro se