UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Arthur Doiron,
        Plaintiff

        v.                            Case No. 21-cv-360-SM
                                      Opinion No. 2023 DNH 060
Jim Brown, et al.,
        Defendants


## O R D E R

Pro se plaintiff Arthur Doiron is an inmate at the New Hampshire State Prison for Men.  He brings this action challenging the conditions of his confinement and alleging violations of various constitutionally protected rights.  The court previously identified seven viable claims (with numerous sub-parts) and directed that they be served upon seven of the named defendants.  Those defendants now move for summary judgment.  For the reasons discussed, that motion is granted.


### Standard of Review

When ruling on a motion for summary judgment, the court is "obliged to review the record in the light most favorable to the nonmoving party, and to draw all reasonable inferences in the nonmoving party's favor."  Block Island Fishing, Inc. v. Rogers,

844 F.3d 358, 360 (1st Cir. 2016) (citation omitted).  Summary
judgment is appropriate when the record reveals "no genuine
dispute as to any material fact and the movant is entitled to
judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In this
context, a factual dispute "is 'genuine' if the evidence of
record permits a rational factfinder to resolve it in favor of
either party, and 'material' if its existence or nonexistence
has the potential to change the outcome of the suit."  Rando v.
Leonard, 826 F.3d 553, 556 (1st Cir. 2016) (citation omitted).
Where a genuine dispute of material facts exists, such a dispute
must "be resolved by a trier of fact," not by the court on
summary judgment.  Kelley v. LaForce, 288 F.3d 1, 9 (1st Cir.
2002).

       When objecting to a motion for summary judgment, "[a]s to
issues on which the party opposing summary judgment would bear
the burden of proof at trial, that party may not simply rely on
the absence of evidence but, rather, must point to definite and
competent evidence showing the existence of a genuine issue of
material fact."  Perez v. Lorraine Enters., 769 F.3d 23, 29-30
(1st Cir. 2014).  In other words, "a laundry list of
possibilities and hypotheticals" and "[s]peculation about mere
possibilities, without more, is not enough to stave off summary
judgment."  Tobin v. Fed. Express Corp., 775 F.3d 448, 451-52

(1st Cir. 2014).  See generally Anderson v. Liberty Lobby, Inc.,
477 U.S. 242, 249 (1986).


## Discussion

I.  Exhaustion and the PLRA

Defendants move for summary judgment based upon a single
argument: Doiron failed to fully and properly exhaust available
prison administrative remedies as to any of his claims prior to
filing suit.  The Prison Litigation Reform Act provides that,
"No action shall be brought with respect to prison conditions
under section 1983 of this title, or any other Federal law, by a
prisoner confined in any jail, prison, or other correctional
facility until such administrative remedies as are available are
exhausted."  42 U.S.C. § 1997e(a).  The Supreme Court has held
"that the PLRA exhaustion requirement requires proper
exhaustion."  Woodford v. Ngo, 548 U.S. 81, 93 (2006).  "Proper
exhaustion" refers to "using all steps that the agency holds
out, and doing so properly (so that the agency addresses the
issues on the merits)."  Id. (citation omitted) (emphasis in
original).  "[I]t is the prison's requirements, and not
the PLRA, that define the boundaries of proper exhaustion."
Jones v. Bock, 549 U.S. 199, 218 (2007).  Claims for which
administrative remedies have not been exhausted are subject to

dismissal.  <u>Medina-Claudio v. Rodríguez-Mateo</u>, 292 F.3d 31, 36 (1st Cir. 2002).

A plaintiff's failure to exhaust administrative remedies is an affirmative defense as to which the defendants bear the burden of proof.  <u>See</u> <u>Jones</u>, 549 U.S. at 216.  But, in response to such proof, an inmate cannot rely on speculation or simple denials.  Rather, to survive summary judgment, the inmate must point to competent evidence showing the existence of a genuinely disputed material fact.  <u>See generally</u> <u>Perez</u>, 769 F.3d  at 29–30; <u>Tobin</u>, 775 F.3d at 451–52.  Here, Doiron has failed to do so.

II.  <u>The NHDOC Grievance Procedures</u>

The New Hampshire Department of Corrections has established a three-tiered system by which inmates may request a formal review of issues related to any aspect of their confinement.  The regulations governing those grievance procedures are set forth in New Hampshire's Administrative Rules, Department of Corrections, Chapter Cor. 300.  <u>See</u> N.H. Code Admin. R. Cor. 313.01, et seq.  As a preliminary matter, an inmate must attempt to resolve any issues or complaints informally, at the lowest level possible.  <u>See</u> <u>Id</u>. at 313.03(a) and 313.04(d).  If that is unsuccessful, the inmate may begin the grievance process by

filing a formal complaint (typically in the form of an inmate request slip) to the highest-level authority within a housing unit or work area.  Cor. 313.04(d).  The recipient or appropriate staff member then investigates the inmate's complaint and, within 15 days of receiving the complaint, responds by granting relief, denying relief, or referring the inmate to the staff member who can address the complaint.  If dissatisfied with that response, the inmate may, within 15 days of receiving it, escalate the complaint by filing a "Level I Grievance."  Cor. 313.05.

Upon receipt, the Level I Grievance is date stamped, and the grievance and response(s) to it are recorded in a "grievance tracking form."  Cor. 313.05(h) and (i).  The warden, director, or administrator investigates the issue if needed, responds within 30 days of receiving the grievance, and communicates the outcome to the prisoner in writing.  Cor. 313.05(l) and (q).  After obtaining a written response to the Level I Grievance, the prisoner can escalate the issue a final time by submitting it to the Commissioner as a Level II Grievance.  Cor. 313.06.  The Level II Grievance undergoes the same process as the Level I Grievance and the Commissioner must respond to the inmate's complaint in writing within 30 calendar days of receipt.  Cor. 313.06 (k), (n), and (o).

To fully exhaust administrative remedies as to any particular complaint, an inmate in the custody of the New Hampshire Department of Corrections must complete each of the three steps of the inmate grievance process in the order and within the timeframes prescribed.  The inmate may not file suit until an issue has been fully and properly grieved.

III. <u>Doiron's Claims</u>

As part of her preliminary review of Doiron's amended complaint (documents no. 1, 4, 8, and 10), the Magistrate Judge identified seven claims that state plausible causes of action. They are as follows:

1.  Doiron's Eighth Amendment right not to be subject to cruel and unusual punishment was violated during his January 29, 2021 – March 1, 2021, placement in the SHU, in that:

    a.  SHU staff failed to provide Doiron with a bottom bunk, for which he had a medical pass;
    b.  SHU staff forced Doiron to sleep on a mattress on the floor, which subjected him to:

        i.   insects crawling on him all day and all night;
        ii.  being sprayed with urine when his cellmate used the cell toilet; and
        iii. sleeping on a mattress which was sitting in raw sewage on several occasions when his housing tier flooded.

2.  Nurse Christin Bartlett violated Doiron's Eighth Amendment right not to be subject to cruel and unusual punishment during his March 1, 2021 – March 31, 2021,

placement in the HSC in that bright lights were kept
on twenty-four hours a day, causing him to have
difficulty sleeping, and Nurse Christine Bartlett did
not allow him to keep his head under his blanket to
block the light.

3. NHSP Corrections Officer Partridge violated Doiron's
Eighth Amendment right not to be subjected to cruel
and unusual punishment in that he used excessive force
against Doiron by pushing his face into a wall without
provocation, and with the intent to cause Doiron pain
and humiliation.

4. NHSP Corrections Officer Partridge violated Doiron's
Eighth Amendment right not to be subjected to cruel
and unusual punishment by subjecting him to unsanitary
and inhumane conditions of confinement, in that, during
a strip search, he required Doiron to place his
hands in or near his anus, and then required Doiron to
put his fingers in his mouth without allowing him to
clean or sanitize his hands, or to use gloves.

5. The Classification defendants, Glenn Matthews, Jay
Mackey, and Tara Whiting, violated Doiron's Eighth
Amendment right to be protected from a significant
risk of serious harm from other inmates in that they
failed to keep Doiron separated from members of a
prison gang who pose a risk to his safety, which
resulted in members of that gang being housed in
proximity to Doiron, and those gang members making
threats to Doiron and his family.

6. The Classification defendants, Mathews, Mackey, and
Whiting, violated Doiron's Fourteenth Amendment due
process rights in that they changed information in his
prison record in CORIS to remove mention of his
security issues with BOWW, without first having Doiron
sign a document stating that those security issues no
longer existed.

7. The defendants violated Doiron's First Amendment right
to petition the government for a redress of grievances
by taking the following actions against Doiron, in

retaliation for his filing administrative grievances
and this lawsuit:

a.    On April 23, 2021, NHSP Corrections Officers
      Navarro and Partridge refused to provide Doiron
      with a lunch meal;

b.    On April 24, 2021, Navarro and Partridge caused
      Doiron to be transferred to the HSC on the basis
      that he was on a hunger strike, when he was
      neither on a hunger strike nor engaged in
      behavior which met the criteria for identifying a
      hunger strike set forth in prison policy;

c.    On April 24, 2021, while Partridge was escorting
      Doiron from the SHU to the HSC, he forcibly
      pressed Doiron's head into the wall in order to
      cause him pain, while a group of officers,
      including Navarro, surrounded and yelled at
      Doiron;

d.    On April 24, 2021, during a strip search,
      Partridge forced Doiron to spread his buttocks by
      placing his fingers in or near his anus, and then
      to place his fingers in his mouth so that his
      mouth could be searched, without allowing Doiron
      to wash or sanitize his hands or to use gloves;

e.    Mathews, Mackey, and Whiting changed Doiron's
      prison records to remove any mention of security
      problems he had with BOWW, and failed to ensure
      that he was not housed with or near BOWW members.

f.    On July 18, 2021, Corrections Officer Carter
      removed Doiron's papers, including legal
      research, filings, and evidence related to this
      case from his cell to interfere with this case.


Report and Recommendation (document no. 16) at 30-32.[1]

---

[1]    By order dated August 19, 2022 (document no. 37), the court
dismissed Claim 2 of Doiron's amended complaint and Nurse
Christine Bartlett is no longer a defendant in this proceeding.

IV. <u>Doiron's Motion for Summary Judgment</u>

Doiron moves for summary judgment "on the PLRA issue," asserting that he has demonstrated that he exhausted prison administrative remedies relating to each of his remaining claims.  Specifically, he says:

> Considering this phase of the case is <u>only</u> about the PLRA issues and exhaustion of internal remedies, with all of the attached documents Mr. Doiron feels this is a properly supported motion for summary judgment regarding whether or not he exhausted his administrative remedies.

Motion for Summary Judgment (document no. 42) at 2 (emphasis in original).  <u>See also</u> Plaintiff's Second Supplemental Response (document no. 74) at 1 ("[Plaintiff] has proven beyond any reasonable doubt that he has in fact exhausted each and every possible remedy within the NHDOC grievance process that was made available to him.").  The court disagrees.

As has been explained to Doiron previously, to demonstrate exhaustion as to any one of the remaining claims in his amended complaint, he must point to an inmate request slip, a Level I Grievance Form, and a Level II Grievance form addressing that claim – all of which comply with the various requirements of the grievance process.  Alternatively, he must credibly allege that the administrative remedies described in that grievance process

were not available to him <u>with respect to that particular claim</u>.
<u>See generally</u> <u>Ross v. Blake</u>, 578 U.S. 632, 642-44 (2016).
Despite having been afforded repeated opportunities to do so,
Doiron has done neither.  Instead, he has simply presented the
court with an unorganized collection of various grievance
documents without linking even a single one of them to a
specific claim in his amended complaint.  Indeed, many of the
grievance documents he has submitted are entirely unrelated to
the claims actually at issue in this case.  <u>See, e.g.,</u> Assorted
Grievances Relating to Medications and Dosages (document no. 49-
1).  Despite Doiron's pro se status, it is his obligation – not
the court's – to review the record evidence and identify those
documents supportive of his claims.  <u>See generally</u> <u>Pliler v.</u>
<u>Ford</u>, 542 U.S. 225, 231-232 (2004).

    Parenthetically, the court notes the following recent
development in the case.  In response to the court's order dated
March 28, 2023 (document no. 70), Jason Darrah, Chief of
Investigations at the New Hampshire Department of Corrections,
undertook a review of the NHDOC's records of all inmate requests
and grievance forms submitted by Doiron during the time period
relevant to this case.  Darrah found no record of several
documents Doiron provided to defendants during discovery.  And,
after examining the style of handwriting and content of the

responses set forth in those documents, Darrah testified that he
"can confidently state that it is more likely than not that
[eleven documents submitted by Doiron] are forgeries."  Darrah
Affidavit (document no. 75) at para. 11.

While Mr. Darrah's findings and conclusions are certainly
troubling (and imply that Doiron knowingly provided falsified
documents to defendants, upon which they relied and subsequently
submitted to the court), they are not material to the matter
presently before the court.  Even assuming the authenticity of
those documents, they fail to establish that Doiron fully and
properly exhausted available prison administrative remedies as
to any of his numerous claims.

V.   Defendants' Motion for Summary Judgment

During the course of discovery, the parties exchanged
nearly 400 pages of documents relating to Doiron's numerous
complaints, inmate request slips, and grievances during the
relevant time period.  As part of that process, defendants asked
Doiron to identify every request slip and every grievance form
related to the seven claims in his amended complaint.  See
Defendants' First Set of Requests for Production (document no.
62-2).  Based upon Doiron's responses, as well as their own
review of NHDOC records, defendants then identified all

11

grievance documents that might arguably be related to any of the claims in this case (including those documents whose authenticity was subsequently called into question).

In December of 2022, defendants followed-up by propounding upon Doiron requests for admissions.  As to each of Doiron's seven claims, defendants asked the same two questions:

A.    First, that Doiron admit that he had failed to fully exhaust that particular claim, as required by the NHDOC administrative regulations and, if he denied that allegation, to specifically identify (either by Bates number or by producing the documents) those documents he alleged demonstrate his compliance with the grievance procedure; and

B.    Second, if Doiron or the defendants had already identified particular documents relating to that specific claim (i.e., an inmate request slip, a Level I Grievance, and/or a Level II Grievance), Doiron was asked to admit that those were the only grievance forms that he had submitted in relation to that particular claim.  If Doiron denied the allegation, he was again asked to identify (either by Bates number or by producing the documents) the additional documents he alleged demonstrate his compliance with the grievance procedure.

See Defendants' Request for Admissions (document no. 62-1).  For each of those two related requests for admission, Doiron gave the same answers.  First, he denied that he had failed to exhaust available administrative remedies.  Then, when asked to identify those documents evidencing his compliance with the

grievance procedures as to each specific claim, he said, in
pertinent part,

> I produced over 200 request slips and grievances,
> where your clients produced about 60.  I'd say you
> should ask your clients where they are.  The slips I
> provided cover all of the issues remaining in this
> case.

Defendants' Request for Admissions (document no. 62-1) at 3-4.
Finally, when asked to admit that the documents that had been
identified as being relevant to a particular claim were the only
documents pertaining to that claim, he again denied that was the
case.  But, rather than identify any additional documents (as
requested), he again simply said that he had turned over to
defendants all potentially relevant documents in his possession
and, therefore, the record contained all documents necessary to
demonstrate exhaustion.  Those responses are plainly deficient.

In their memorandum in support of summary judgment,
defendants have painstakingly reviewed every one of Doiron's
claims.  As to each, they have identified the steps (if any)
that Doiron took to grieve that particular claim and they have
submitted every inmate request slip, Level I Grievance, and
Level II Grievance arguably related to that claim (including
those which defendants now believe are fraudulent).  Those
documents are attached to defendants' memorandum as exhibits 1-

18 (documents no. 62-3 through 62-20).  Other than his general
arguments and denials, Doiron has not specifically identified
even a single additional document upon which he is relying in
support of his claimed exhaustion.  Nor has Doiron submitted an
affidavit or any witness statements in support of his assertion
that DOC officials occasionally failed to provide him with
copies of relevant grievance documents (thus explaining his
claimed inability to produce or otherwise identify them).

    The court need not recount the detailed analysis of
Doiron's claims that the defendants have set forth in their
legal memorandum.  It is sufficient to note the following.  As
to each of those claims, defendants have demonstrated that
Doiron either:

> (a)  neglected to properly <u>initiate</u> the grievance
>      process by filing a timely inmate request slip
>      (for example, that includes, but is not limited
>      to, claim 1(a) and (b), claim 3, and claim 4);
>      and/or
>
> (b)  failed to fully and properly <u>exhaust</u> the three-
>      tier grievance process (including, but not
>      limited to, claim 5, claim 6, and claim 7(a));
>      and/or
>
> (c)  neglected to <u>comply with administrative
>      requirements</u> by, for example, filing suit before
>      completing the grievance process (e.g., claim 4,
>      claim 5, and claim 7(b)), or by referencing
>      multiple issues, rather than the required one
>      issue per submission (e.g., claim 3, claim 4, and
>      claim 5), or by failing to comply with

administrative filing deadlines (e.g., claims
7(c)-(e)).

For most of Doiron's claims defendants have noted multiple
deficiencies.

Based upon the record presented, and even assuming the
authenticity of the disputed documents, the court can reach only
one conclusion: Doiron did not fully and properly exhaust any of
the claims he is pursing in this litigation.  At this stage of
the proceeding, Doiron cannot simply rely upon his broad and
unsupported assertion that he has fully and properly exhausted
all claims before the court.  He has been afforded more than
ample opportunity to specifically identify those documents
evidencing his compliance with the PLRA's exhaustion
requirements, see, e.g., Order dated March 28, 2023 (document
no. 70) at 5-6, and, yet, he has consistently and steadfastly
failed to do so.

**Conclusion**

Defendants' move for summary judgment on all seven of
Doiron's remaining claims, on grounds that he failed to fully
and properly exhaust available prison administrative remedies,
as required by the PLRA and New Hampshire's Administrative
Rules, Department of Corrections, Chapter Cor. 300.  In support

of that motion, defendants have demonstrated that Doiron did not fully and properly exhaust any of those remaining claims.  In response, Doiron has failed to point to any evidence in the record (nor has he pointed to any new evidence) that undermines defendants' position.  There are, then, no genuinely disputed material facts and defendants have demonstrated that they are entitled to judgment as a matter of law.

Defendants' motion for summary judgment as to all of Doiron's remaining claims (**document no. 62**) is, therefore, granted.  Plaintiff's motion for summary judgment (**document no. 42**) is denied.  All other pending motions – including Doiron's Motion for Sanctions (**document no. 55**) and his Motion to Compel (**document no. 67**) - are denied as moot.  The Clerk of Court shall enter judgment in accordance with this order and close the case.

        **SO ORDERED.**

                                        _____
                                        Steven J. McAuliffe
                                        United States District Judge

May 15, 2023

cc:  Arthur Doiron, pro se
     Brandon F. Chase, Esq.
     Lawrence Gagnon, Esq.